**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

BRADLEY ROSENFELD,           :
                              Civil Action No. 07-2907 (RMB)
         Petitioner,         :

         v.                  :   **OPINION**

CHARLES E. SAMUELS, JR.,     :

         Respondent.         :

**APPEARANCES:**

Petitioner pro se                Counsel for Respondent
Bradley Rosenfeld                Asst. U.S. Attorney
F.C.I. Fort Dix                  402 East State Street
P.O. Box 2000                    Room 430
Fort Dix, NJ 08640               Trenton, NJ 08608

**BUMB**, District Judge

Petitioner Bradley Rosenfeld, a prisoner currently confined at the Federal Correctional Institution at Fort Dix, New Jersey, has submitted a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.[1]  The sole respondent is Warden Charles E. Samuels, Jr.

---

[1] Section 2241 provides in relevant part:

(a) Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions.
(c) The writ of habeas corpus shall not extend to a prisoner unless-- ... (3) He is in custody in violation of the Constitution or laws or treaties of the United States ... .

I. BACKGROUND

Petitioner was arrested in January 2000 and was released on bail until his conviction and incarceration in May 2001. Petitioner is serving a 121-month sentence upon his conviction for violating 21 U.S.C. § 846 and 26 U.S.C. § 7206, Conspiracy to Distribute Marijuana and Subscribing to a False Tax Return. His projected release date is February 14, 2010, via good conduct time earned.

Petitioner has sought to participate in the Bureau of Prisons 500-hour Residential Drug Abuse Treatment Program, upon completion of which he would be eligible for consideration for a reduction in the term of his imprisonment of up to one year. The BOP determined that Petitioner did not meet the eligibility criteria for participation in the Program, based upon the fact that he did not have a record of substance abuse during the twelve-month period immediately preceding his incarceration in May 2001.

Petitioner initiated an administrative review of the denial of his request to participate in the Program, but did not pursue his appeals to completion.[2] Instead, Petitioner filed this

---

[2] The BOP Administrative Remedy Program is a three-tier process that is available to inmates confined in institutions operated by the BOP for "review of an issue which relates to any aspect of their confinement." 28 C.F.R. § 542.10. An inmate must initially attempt to informally resolve the issue with institutional staff. 28 C.F.R. § 542.13(a). If informal resolution fails or is waived, an inmate may submit a BP-9

Petition challenging the BOP eligibility criteria and arguing that the decision to deny his request to participate was "arbitrary and capricious."[3]

---

Request to "the institution staff member designated to receive such Requests (ordinarily a correctional counsel)" within 20 days of the date on which the basis for the Request occurred, or within any extension permitted. 28 C.F.R. § 542.14. An inmate who is dissatisfied with the Warden's response to his BP-9 Request may submit a BP-10 Appeal to the Regional Director of the BOP within 20 days of the date the Warden signed the response. 28 C.F.R. § 542.15(a). The inmate may appeal to the BOP's General Counsel on a BP-11 form within 30 days of the day the Regional Director signed the response. Id. Appeal to the General Counsel is the final administrative appeal. Id. If responses are not received by the inmate within the time allotted for reply, "the inmate may consider the absence of a response to be a denial at that level." 28 C.F.R. § 542.18.

[3] Although 28 U.S.C. § 2241 contains no statutory exhaustion requirement, a federal prisoner ordinarily may not bring a petition for writ of habeas corpus under 28 U.S.C. § 2241, challenging the execution of his sentence, until he has exhausted all available administrative remedies. See, e.g., Callwood v. Enos, 230 F.3d 627, 634 (3d Cir. 2000); Arias v. United States Parole Comm'n, 648 F.2d 196, 199 (3d Cir. 1981); Soyka v. Alldredge, 481 F.2d 303, 306 (3d Cir. 1973). The exhaustion doctrine promotes a number of goals:

> (1) allowing the appropriate agency to develop a factual record and apply its expertise facilitates judicial review; (2) permitting agencies to grant the relief requested conserves judicial resources; and (3) providing agencies the opportunity to correct their own errors fosters administrative autonomy.

Goldberg v. Beeler, 82 F.Supp.2d 302, 309 (D.N.J. 1999), aff'd, 248 F.3d 1130 (3d Cir. 2000). See also Moscato v. Federal Bureau of Prisons, 98 F.3d 757, 761 (3d Cir. 1996). Nevertheless, exhaustion of administrative remedies is not required where exhaustion would not promote these goals. See, e.g., Gambino v. Morris, 134 F.3d 156, 171 (3d Cir. 1998) (exhaustion not required where petitioner demonstrates futility); Lyons v. U.S. Marshals, 840 F.2d 202, 205 (3d Cir. 1988) (exhaustion may be excused where it "would be futile, if the actions of the agency clearly and

## II. ANALYSIS

In 1990, Congress charged the Bureau of Prisons with making available "appropriate substance abuse treatment for each prisoner the Bureau determines has a treatable condition of substance addiction or abuse." 18 U.S.C. § 3621(b). To carry out that requirement, as part of the 1994 Violent Crime Control and Law Enforcement Act, Congress amended § 3621 to require the BOP, subject to the availability of appropriations, to provide residential substance abuse treatment for all "eligible" prisoners. 18 U.S.C. § 3621(e)(1)(C). An "eligible" prisoner is one who is "determined by the Bureau of Prisons to have a substance abuse problem," and who is "willing to participate in a residential substance abuse treatment program." 18 U.S.C. § 3621(e)(5)(B)(i) and (ii). As an incentive for successful completion of the residential treatment program, the period of time a prisoner convicted of a nonviolent offense remains in custody after successfully completing such a treatment program

---

unambiguously violate statutory or constitutional rights, or if the administrative procedure is clearly shown to be inadequate to prevent irreparable harm"); Carling v. Peters, 2000 WL 1022959, *2 (E.D. Pa. 2000) (exhaustion not required where delay would subject petitioner to "irreparable injury").

   Respondent contends that this Petition should be dismissed because Petitioner failed to comply with the administrative appeals process. Petitioner contends that exhaustion would be futile. Because the Petition is meritless, this Court need not determine whether to excuse Petitioner's failure to exhaust.

may be reduced up to one year by the BOP.  18 U.S.C. § 3621(e)(2).

The BOP has promulgated regulations at 28 C.F.R. § 550.56 to implement the statutory requirement.  The regulation requires that "[t]he inmate must have a verifiable documented drug abuse problem."  28 C.F.R. § 550.56(a)(1).  "The decision on placement is made by the drug abuse treatment coordinator."  28 C.F.R. § 550.56(b).  The BOP application of this regulation is contained in Program Statement 5330.10, which provides, in pertinent part:

> 5.4.1.  Drug abuse program staff shall determine if the inmate has a substance abuse disorder by first conducting the *Residential Drug Abuse Eligibility Interview* followed by a review of all pertinent documents in the inmate's central file to corroborate self-reported information.  The inmate must meet the diagnostic criteria for substance abuse or dependence indicated in the *Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition, (DSM-IV)*.  This diagnostic impression must be reviewed and signed by a drug abuse treatment program coordinator.
>
> Additionally, there must be verification in the Pre-sentence Investigation (PSI) Report or other similar documents in the central file which supports the diagnosis.  Any written documentation in the inmate's central file which indicates that the inmate used the same substance, for which a diagnosis of abuse or dependence was made via the interview, shall be accepted as verification of a drug abuse problem.

Program Statement 5330.10, Drug Abuse Programs Manual, Ch. 5, § 5.4.1.

The Diagnostic and Statistical manual of Mental Disorders, Fourth Edition, "DSM-IV," published by the American Psychiatric Association, defines Substance Abuse or Substance Dependence as a cluster of certain listed symptoms in the same twelve-month

5

period.  The first twelve-month period following Dependence or Abuse is designated Early Remission.  The specifiers of Early Remission do not apply if the individual is in a "controlled environment."  Examples of a "controlled environment" include "closely supervised and substance-free jails, therapeutic communities, or locked hospital units."  DSM-IV at 175-183.

Thus, the BOP has instituted a practice of (1) reviewing the prisoner's history of substance abuse during the twelve-month period precedent entry into a "controlled environment" and (2) examining the prisoner's central file to determine if documentation exists to support a claim of substance abuse or dependence during the twelve-month period immediately preceding the prisoner's incarceration.

Here, Petitioner challenges the BOP use of the twelve-month period immediately prior to his conviction and incarceration, during which he was released on bond and under supervision, subject to random drug testing, for the determination of whether he has a substance abuse problem.  Petitioner contends that he was in "constructive custody" during the period of pre-trial release, because he was subject to random drug testing as a condition of his release.  Accordingly, Petitioner contends that the BOP should have used the 12-month period prior to his initial arrest.

The standards set forth in Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc., 674 U.S. 837 (1984), govern a court's review of an agency's regulations construing a statute.

> When a court reviews an agency's construction of the statute which it administers, it is confronted with two questions. First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the courts, as well as the agency, must give effect to the unambiguously expressed intent of Congress. If, however, the court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.

Chevron, 467 U.S. at 842-43 (footnotes omitted). Even where the agency construction appears in an "interpretive" rule not subject to the "notice-and-comment" procedure of the Administrative Procedure Act, the agency's interpretive rule is entitled to "some deference" where it is a permissible construction of the governing statute. Reno v. Koray, 515 U.S. 50, 61 (1995).

In Lopez v. Davis, 531 U.S. 230 (2001), the Supreme Court upheld a related BOP regulation interpreting the phrase "nonviolent offense" and categorically excluding certain types of prisoners from participation in the early-release program.

> Beyond instructing that the Bureau has discretion to reduce the period of imprisonment for a nonviolent offender who successfully completes drug treatment, Congress has not identified any further circumstance in which the Bureau either must grant the reduction, or is

> forbidden to do so.  In this familiar situation, where
> Congress has enacted a law that does not answer "the
> precise question at issue," all we must decide is
> whether the Bureau, the agency empowered to administer
> the early release program, has filled the statutory gap
> "in a way that is reasonable in light of the
> legislature's revealed design."

Lopez, 531 U.S. at 242 (citations omitted).

Similarly, here, Congress has not spoken to the precise question at issue but has left it to the discretion of the Bureau of Prisons to determine which prisoners "have a substance abuse problem."  The BOP reasonably has turned to the DSM-IV criteria to identify prisoners who have a substance abuse problem.  As the DSM-IV, in turn, dictates that diagnosis is dependent upon the existence of certain symptoms during a twelve-month period, and that remission is dependent upon the absence of those symptoms unless one is in a "controlled environment," it is reasonable for the BOP to evaluate the existence of those symptoms during the twelve-month period immediately preceding a prisoner's entrance into the controlled environment of long-term incarceration.  Moreover, because of the sentence-reduction incentive, it is reasonable for the BOP to review the PSI and central file for documentation corroborating a prisoner's self-report of substance abuse.  Thus, the challenged policy and practice of the BOP is a reasonable interpretation of the statute, as most courts agree.  See, e.g., Rea v. Sniezek, 2007 WL 427038 (N.D. Ohio Feb. 2, 2007); Shew v. F.C.I. Beckley, 2006 WL 3456691 (S.D.W.Va. Sept.

19, 2006); Montilla v. Nash, 2006 WL 1806414 (D.N.J. June 28, 2006); Quintana v. Bauknecht, 2006 WL 1174353 (N.D. Fla. May 2, 2006); Goren v. Apker, 2006 WL 1062904 (S.D.N.Y. April 20, 2006); Laws v. Barron, 348 F.Supp.2d 795 (E.D. Ky. 2004). Contra, Smith v. Vazquez, 491 F.Supp.2d 1165 (S.D. Ga. 2007).

In addition, there was no abuse of discretion in the BOP's application of the policy to Petitioner. Petitioner does not dispute that there is no evidence of substance abuse during the period he was released on bail. In addition, in light of the DSM-IV definition of remission as excluding only those periods during which the individual is in a "controlled environment" such as "closely supervised and substance-free jails ... or locked hospital units," it is not arbitrary and capricious for the BOP to include remission behavior during periods of only limited supervision such as Petitioner's release on bail subject only to random drug testing. The BOP did not act arbitrarily or abuse its discretion in denying Petitioner entrance into the 500-hour RDAP. Petitioner is not entitled to the writ.

### III.  CONCLUSION

For the reasons set forth above, the Petition must be denied. An appropriate order follows.

s/Renée Marie Bumb
Renée Marie Bumb
United States District Judge

Dated: March 26, 2008